## McALLISTER LIGHTERAGE LINE, INC. *v.* UNITED STATES ET AL.

No. 616.   Argued March 5, 1946.—Decided March 25, 1946.

*Roman Beck* argued the cause for appellant.   With him on the brief was *Maurice A. Krisel.*

*Walter J. Cummings, Jr.* argued the cause for appellees. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Berge, Edward Dumbauld, Daniel W. Knowlton* and *Edward M. Reidy.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

The appellant applied to the Interstate Commerce Commission for a certificate as a common carrier by water under the "grandfather" clause of § 309 (a) of Part III

of the Interstate Commerce Act.[1] The authority sought was to continue a transportation service by tug and barge which appellant had performed at one time over routes along the Atlantic seaboard and certain inland waterways. The application was denied by the Commission. A specially-constituted District Court upheld the Commission's order, dismissing appellant's suit to set the order aside. The case comes to us by direct appeal from the District Court.

Under § 309 (a) appellant was entitled to a certificate without proof of public convenience or necessity if it could demonstrate that it or its predecessor in interest "was in bona fide operation as a common carrier by water on January 1, 1940, over the route or routes or between the ports with respect to which application is made and has so operated since that time (or, if engaged in furnishing seasonal service only, was in bona fide operation during the seasonal period, prior to or including such date, for operations of the character in question) except, in either event, as to interruptions of service over which the applicant or its predecessor in interest had no control . . ."

The undisputed evidence submitted to the Commission revealed that appellant or its predecessors have been engaged in marine transportation since 1864 and that the business has been continuously owned by its founder or his descendants through four generations. Past activities have been extensive and varied and have included the freight services forming the subject matter of the application in issue.

Appellant conceded before the Commission, however, that from 1933 through 1939 its freight operations virtually ceased[2] and that its activities were confined pri-

---

[1] 49 U. S. C. § 909 (a).

[2] In 1937 machinery, airplanes, guns and parts were carried between New York harbor, Hudson River and Long Island Sound points but this service has not been repeated.

marily to operations in the New York harbor area which were of a type exempt from regulation under the Interstate Commerce Act.[3] Appellant claimed that it had bent every effort during these years to obtain freight customers and that the paucity of its operations resulted solely from the severe economic depression which prevailed during that period. It was argued that this interruption in freight service prior to January 1, 1940, was due to factors beyond appellant's control within the meaning of the proviso of § 309 (a), preventing a forfeiture of its "grandfather" rights.

Since January 1, 1940, appellant's fleet has been engaged almost exclusively within the New York harbor in the performance of lighterage and other work essential to the war effort. So great were its commitments for service within the harbor that it has been unable to accept other traffic when offered. Appellant's claim was that this diversion of its vessels to war work after January 1, 1940, was also an interruption in regular service beyond its control, further preventing a forfeiture of "grandfather" rights under § 309 (a).

Appellant thus admitted before the Commission that it was not entitled to a certificate under the "grandfather" clause unless the business depression and the war service constituted complete and involuntary interruptions in its regular freight service, thereby bringing the proviso of § 309 (a) into operation. After reviewing the evidence, the Commission made the following conclusions: "The evidence of record establishes the fact that applicant for a period of over 10 years has performed only an inconsequential amount of transportation of a kind that is now subject to the act, and that it is not holding itself out at

_____

[3] Under § 303 (g) of the Act, transportation in interstate commerce by water solely within the limits of a single harbor is exempt from regulations under the Act, unless the Commission finds that the national transportation policy requires regulation.

the present time to perform such transportation. Obviously, the remote operations heretofore described do not establish bona fide operations on January 1, 1940, and since. Furthermore, applicant has considerable facilities available at the present time, the use of which it voluntarily has confined to exempt transportation within the limits of New York Harbor. We affirm the conclusion of the prior report that applicant has not established that it is entitled to 'grandfather' rights."

The District Court held that the Commission failed to make sufficiently definite findings that the interruption in service on or prior to January 1, 1940, either was or was not beyond the control of appellant and its predecessors. The Commission merely found the admitted fact that appellant did not perform a sufficient amount of bona fide operations on or prior to the crucial date. The District Court felt that if that finding were the sole basis of the Commission's action, there would be merit to appellant's contention that the case should be remanded to the Commission for a clarification of its findings. But this assumes that the proviso of § 309 (a) regarding interruption of service over which the applicant had no control relates to the service "on January 1, 1940," as well as to the service subsequent to that date. The Government contends, however, that the proviso refers only to the latter service and that if there is no proof of service on the "grandfather" date the applicant is not entitled to a certificate upon proof that such lack of service was due to circumstances beyond the applicant's control. Under this view the Commission's failure to make adequate findings as to interruption of service prior to January 1, 1940, becomes immaterial.

We deem it unnecessary at this time, however, to settle this problem of statutory construction, it being clear in any event that the proviso is applicable to interruptions after January 1, 1940. Failure to prove that such an interruption was beyond the applicant's control leads to a

forfeiture of "grandfather" rights. As to that issue we agree with the District Court that the Commission made adequate findings that appellant failed to show continuity of service subsequent to January 1, 1940, and that there was no recognizable excuse for the lack of service. The Commission expressly found that appellant "is not holding itself out at the present time to perform such transportation" and that it "has considerable facilities available at the present time, the use of which it voluntarily has confined to exempt transportation within the limits of New York Harbor." This clearly means that, in the Commission's view, the war emergency did not compel appellant to restrict its activities to exempt operations in the harbor area, thereby making the proviso of § 309 (a) inapplicable. That conclusion, we believe, is amply supported by the evidence and contravenes no statutory rule.

There was no evidence before the Commission that appellant's war work was other than voluntary in character. Appellant conceded the lack of any governmental order restricting its activities solely to the New York harbor area or prohibiting it from operating over the routes it now seeks to ply.[4]  The major claim, without supporting

---

[4] Cf. *American-Hawaiian Steamship Company Common Carrier Application,* 250 I. C. C. 219, 222; *Bull Steamship Line Common Carrier Application,* 250 I. C. C. 317, 319; *Isthmian Steamship Company Common Carrier Application,* 250 I. C. C. 359, 362; *Southern Pacific Company Common Carrier Application,* 250 I. C. C. 457, 462; *Coast Transportation Co., Inc., Common and Contract Carrier Application,* 250 I. C. C. 469, 472; *Weyerhaeuser Steamship Co. Common Carrier Application,* 250 I. C. C. 477, 479; *American Range Lines, Inc., Contract Carrier Application,* 250 I. C. C. 510, 511; *Great Lakes Transit Corporation Applications,* 260 I. C. C. 9, 10; *Providence Steamboat Company Contract Carrier Application,* 260 I. C. C. 23, 24; *St. Johns River Line Co. Common Carrier Application,* 260 I. C. C. 74, 77; *Nicholson Transit Co. Contract Carrier Application,* 260 I. C. C. 232, 233.

evidence, was that the traffic in the New York harbor was so great during the war as to necessitate intensive utilization of every available tug, barge, lighter and scow in the movement of war cargoes. It was also alleged, without proof, that the Office of Defense Transportation beyond "the slightest doubt" would have frustrated any attempt by appellant to utilize a substantial portion of its fleet in freight service along the Atlantic coast and, if necessary, would have requested the War Shipping Administration to requisition appellant's vessels.[5] The speculative and insubstantial nature of these unsupported claims is obvious. They rest upon the questionable assumption that essential war work could be done only in the New York harbor and that there was no essential transportation service along the Atlantic coast or inland waterways in which appellant could have participated. They require one to guess what action governmental agencies would have taken under hypothetical situations. We do not imply, of course, that such claims are untrue or that, if proved, they might not adequately support appellant's position. But there is nothing in this record to substantiate the claims. Certainly an administrative order should be grounded upon something more definite and substantial than the surmises offered by appellant.

Appellant's activities had been confined to the New York harbor area since 1933, long before the outbreak of the war. In the absence of any attempt to expand the activities and in the absence of proof of any governmental restriction, it was reasonable to find that appellant voluntarily chose to continue its activities on a limited scale. Such a choice may well have been dictated by considerations of profit and convenience. That these limited ac-

---

[5] Appellant pointed out that the Government exerted control over all domestic shipping during the war. The Office of Defense Transportation, for example, confined barge movements along the Atlantic coast largely to the movement of coal.

tivities coincided with wartime needs does not necessarily prove that they were other than voluntary in nature. Much activity in recent years furthered the war effort although it was profitable and although it was done without compulsion by public authority.

The Commission was therefore justified in concluding that appellant's failure to engage in bona fide operations since January 1, 1940, was due to circumstances other than those over which appellant had no control. Appellant accordingly forfeited whatever "grandfather" rights it might have had.

*Affirmed.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE RUTLEDGE dissent.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.